**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **JESUS HERNANDEZ, et al., individually** | : | |
| **and on behalf of all others similarly situated,** | : | **CIVIL ACTION** |
| **Plaintiffs,** | : | |
| **v.** | : | |
| | : | |
| **ASHLEY FURNITURE INDUSTRIES, INC.,** | : | |
| **et al.,** | : | **No. 10-5459** |
| **Defendants.** | : | |

<u>**MEMORANDUM**</u>

**Schiller, J.**                                                                                              **August 13, 2012**

      Jesus Hernandez, Raquel Marte, and Steven Wambold bring this putative class action against their former employer, Ashley Furniture Industries, Inc. ("Ashley"), and Joseph Murphy, the former Director of Operations for Ashley's facility in Leesport, Pennsylvania. Plaintiffs allege violations of the Pennsylvania Minimum Wage Act and the Pennsylvania Wage Payment and Collection Law by both Defendants. Currently before the Court is Murphy's motion for summary judgment. The Court held oral argument on August 8, 2012. For the following reasons, the motion is granted.

## I.     BACKGROUND

      Ashley is a furniture manufacturer headquartered in Arcadia, Wisconsin. (Defs.' Mem. of Law in Opp'n to Pls.' Mot. for Class Certification [Defs.' Class Certification Resp.] Ex. A [Dotta Decl.] ¶ 3.) Ashley's Leesport facility opened as a warehouse and distribution center in 2004. (Mot. for Summ. J. of Def. Joseph Murphy [Def.'s Mot.] Ex. B [Smith Dep.] at 8-9.) In 2006, Ashley started a manufacturing operation in the Leesport facility. (Dotta Decl. ¶ 3.) Brent Koslo, Ashley's Executive Vice President of Upholstery Operations, hired Murphy as Director of Operations in the Leesport facility. (Def.'s Mot. Ex. A [Koslo Dep.] at 10-12, 14-15; Def.'s Mot. Ex. C [Murphy Dep.]

at 60-63.) Murphy remained in this position until November 2011. (Murphy Dep. at 21-22.)

As Director of Operations, Murphy was responsible for the manufacturing operation, but he had no involvement in the warehouse operation. (Murphy Dep. at 62.) He supervised a small group of production superintendents and assembly managers who, in turn, supervised subordinate managers and hourly-paid supervisors. (Koslo Dep. at 30-34; Def.'s Mot. Ex. D [Wade Dep.] at 26-29.) Murphy reported to Koslo, who was based in Mississippi. (Koslo Dep. at 10-12, 14-15.) There were no employees ranked higher than Murphy in the Leesport facility, and he was the only employee eligible for annual operational bonuses. (*Id.* at 14-15, 26, 165-66.) He had the authority to hire employees but not to fire them. (Murphy Dep. at 100.)

The Leesport facility had a finance department consisting of a staff financial employee and a payroll clerk who reported to Diana Long, the Upholstery Divisional Controller. (Koslo Dep. at 20-21; Wade Dep. at 82-83; Defs.' Class Certification Resp. Ex. D [Long Decl.] ¶¶ 2-3.) Long was located in California and reported to Koslo. (Long Decl. ¶ 2.) Employees in Ashley's Leesport facility who had a complaint about their wages were expected to go to their supervisor, who would accompany them to speak with the payroll clerk, who would then determine whether an adjustment was necessary. (Def.'s Mot. Ex. E [Gombar Dep.] at 28-30; Murphy Dep. at 115; Wade Dep. at 81-83.) Murphy had no responsibility for payroll matters. (Murphy Dep. at 63.)

Ashley has an incentive pay system under which some assembly employees receive an hourly wage that is adjusted according to how efficiently they work as measured against Ashley's engineering standards. (Koslo Dep. at 33-34; Defs.' Class Certification Resp. Ex. F [Muller Dep.] at 23.) Murphy did not participate in the development of these engineering standards. (Def.'s Mot. Ex. F [Robbins Dep.] at 10-16, 41.) Likewise, Murphy had no responsibility for developing written

2

employment policies, including those related to timekeeping. (Murphy Dep. at 78.) He was not always informed of changes to such policies. (*Id.* at 79.)

Hernandez did not know who Murphy was. (Def.'s Mot. Ex. G [Hernandez Dep.] at 46.) Wambold had no interaction with Murphy. (Def.'s Mot. Ex. H [Wambold Dep.] at 77-79.) Marte spoke with Murphy only once, to complain about missing hours, and Murphy told her to talk to her supervisor. (Def.'s Mot. Ex. I [Marte Dep.] at 117.)

## II.     STANDARD OF REVIEW

Summary judgment is appropriate when the admissible evidence fails to demonstrate a genuine dispute of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986). When the movant does not bear the burden of persuasion at trial, it may meet its burden on summary judgment by showing that the nonmoving party's evidence is insufficient to carry its burden of persuasion. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986).

Thereafter, the nonmoving party demonstrates a genuine issue of material fact if it provides evidence sufficient to allow a reasonable finder of fact to find in its favor at trial. *Anderson*, 477 U.S. at 248. In reviewing the record, a court "must view the facts in the light most favorable to the nonmoving party and draw all inferences in that party's favor." *Prowel v. Wise Bus. Forms*, 32 F.3d 768, 777 (3d Cir. 2009). The court may not, however, make credibility determinations or weigh the evidence in considering motions for summary judgment. *See Reeves v. Sanderson Plumbing Prods.*, 530 U.S. 133, 150 (2000); *see also Goodman v. Pa. Tpk. Comm'n*, 293 F.3d 655, 665 (3d Cir. 2002).

### III.   DISCUSSION

Plaintiffs assert claims against Murphy for violations of the Pennsylvania Wage Payment and Collection Law ("WPCL") and the Pennsylvania Minimum Wage Act ("MWA"). Murphy argues that he cannot be held individually liable under either statute because he does not qualify as an employer.

The WPCL permits employees to recover unpaid wages and benefits owed by an employer. 43 Pa. Stat. §§ 260.3, 260.9a. The statute defines "employer" as "every person, firm, partnership, association, corporation, receiver or other officer of a court of this Commonwealth and any agent or officer of any of the above-mentioned classes employing any person in this Commonwealth." *Id.* § 260.2a. This definition "has been held to include a corporation's highest ranking officers, because they are the persons who are likely to have established and implemented the policy for the non-payment of the wages and benefits at issue." *Belcufine v. Aloe*, 112 F.3d 633, 635 (3d Cir. 1997) (internal quotation marks omitted). The purpose of individual liability under the WPCL "is to give top corporate managers an incentive to use available corporate funds for the payment of wages and benefits rather than for some other purpose." *Id.* at 634. Thus, the WPCL applies "in only those contexts in which the managers have room to behave strategically." *Id.* at 639; *see also Hirsch v. EPL Techs., Inc.*, 910 A.2d 84, 89 (Pa. Super. Ct. 2006) ("[T]o be considered an employer for purposes of the WPCL, a person must have exercised a policy-making function in the company and/or an active role in the corporation's decision making process.").

The MWA permits employees to sue an employer for minimum wage and overtime violations. *See* 43 Pa. Stat. §§ 333.104, 333.113. The statute defines "employer" as "any individual, partnership, association, corporation, business trust, or any person or group of persons acting,

4

directly or indirectly, in the interest of an employer in relation to any employe[e]." *Id.* § 333.103. In

deciding whether to impose individual liability under the MWA, one important consideration is

whether the defendant had "operational control" over the company. *Pagan v. New Wilson's Meats,*

*Inc.*, Civ. A. No. 08-751, 2008 WL 3874720, at *5 (E.D. Pa. Aug. 19, 2008).

Plaintiffs concede that Murphy was not a corporate officer of Ashley, but they contend that

he nonetheless qualifies as an employer under the WPCL and the MWA because "he was able to

make policy and other decisions regarding employment and wages within the Leesport facility he

managed." (Pls.' Reply Contra Def. Joseph Murphy's Mot. for Summ. J. [Pls.' Resp.] at 4.) They

do not, however, identify any wage-related policies that Murphy had a role in creating. *See Hirsch*,

910 A.2d at 90 (mere allegations that defendant was a policymaker without identification of "specific

corporate policy-making decisions in which [he] participated" did not establish individual liability

under the WPCL). Instead, Plaintiffs rely on evidence that: (1) Murphy was among the highest-

ranking employees in the Leesport facility and the only one eligible for annual operational bonuses;

(2) Murphy was responsible, in part, for the areas of the facility where hourly employees worked;

(3) Murphy met with assembly supervisors and received production summaries from the payroll

clerk on a daily basis; (4) Murphy reviewed operating expenses with the finance manager on a

weekly basis; (5) Murphy participated in the hiring of managers; (6) Murphy had access to the

timekeeping system; (7) Murphy was occasionally consulted on pay disputes; and (8) Murphy took

steps to ensure that employees came to work on time. (Pls.' Resp. at 7; Murphy Dep. at 62, 86, 113-

14, 150, 152-53; Pls.' Resp. Ex. F [Drenning Dep.] at 66; Wade Dep. at 128; Koslo Dep. at 26, 30-

31, 165-66.) These facts have no bearing on Murphy's ability to make corporate policy or exercise

operational control. If anything, they indicate that Murphy "performed primarily managerial and

ministerial duties within his sphere of responsibility," carrying out policies set by others. *Hirsch*, 910 A.2d at 90.

For example, in one of the incidents cited by Plaintiffs, router operators met with Murphy about discrepancies in their paychecks. (Pls.' Resp. at 9; Pls.' Resp. Ex. J [Velazquez Dep.] at 122-24, 129-32.) Murphy told the employees he would "get back to" them, but an employee from Mississippi who worked for the finance department ultimately addressed their concerns instead. (Velazquez Dep. at 122, 132.) It is irrelevant that employees complained to Murphy about their wages if he had no control over Ashley's compensation policies. *See Carpenters Health & Welfare Fund of Phila. & Vicinity v. Kenneth R. Ambrose, Inc.*, 727 F.2d 279, 283 (3d Cir. 1983) ("To us it is questionable whether the WPCL has so broad a scope that it imposes personal liability on those lower level corporate officers or employees who are merely implementing a policy at the command of their superiors."), *overruled on other grounds*, *McMahon v. McDowell*, 794 F.2d 100 (3d Cir. 1986); *Mohney v. McClure*, 568 A.2d 682, 686 (Pa. Super. Ct. 1990) (no individual liability under the WPCL when evidence did not show that defendant "actively participated in decisions or gave advice regarding pay or compensation" but rather indicated that "he merely carried out decisions made by others"), *aff'd*, 604 A.2d 1021 (Pa. 1992). The evidence in the record is not sufficient to impose individual liability on Murphy under the Pennsylvania wage statutes.


IV.     **CONCLUSION**

Because Murphy does not qualify as an "employer" under the WPCL or MWA, the Court grants his motion for summary judgment. An Order consistent with this Memorandum will be docketed separately.